<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TIFFANY S. W., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO <br> Acting Commissioner of Social Security, <br><br> Defendants. | Case No. 2:24-cv-10656 (BRM) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Tiffany S. W.'s ("Plaintiff") appeal of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA")[1] denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). (ECF No. 1.). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed and considered the submissions filed in connection with the appeal and having declined to hold oral argument in accordance with Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, Plaintiff's appeal of the Commissioner's final decision is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

---

[1] Frank Bisignano became the new Commissioner of the Social Security Administration ("SSA") on May 7, 2025. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Bisignano is substituted as Defendant (at the time of Plaintiff's appeal, Leland Dudek was the Acting Commissioner of the SSA). *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

I. BACKGROUND

A. Procedural History

This matter arises out of the Ad final decision denying Plaintiff's application for DIB. (Transcript of Proceedings ("Tr.") (ECF No. 6-1) at 1.) On October 29, 2021, Plaintiff applied for DIB, alleging disability beginning May 1, 2021 (*id.* at 15) based on the following allegations of impairments: a spinal stenosis; lumbar, lumbosacral, and cervical radiculopathy; segmental and somatic dysfunction of cervical, sacral, and thoracic regions; sciatica; bursitis of the left shoulder; obesity; anxiety; depression; and lower back pain (Pl.'s Social Security Br. (ECF No. 9) at 7).

Administrative Law Judge ("ALJ") Sharon Allard held a hearing on August 22, 2023. (Tr. at 34.) In her initial decision on January 29, 2024, the ALJ found that Plaintiff was not disabled within the meaning of 42 U.S.C. § 405(g). (*Id.* at 24.) On September 23, 2024, the Appeals Council denied Plaintiff's request for review, and determined there was no basis for disturbing the ALJ's decision. (Tr. at 1–4.)

B. Administrative History

The ALJ employed the five-step process established by the SSA to evaluate whether the Plaintiff was eligible for social security and disability benefits. (*Id.* at 16.) At step one, the ALJ found Plaintiff "has not engaged in substantial gainful activity since . . . the alleged onset date," explaining while she had "worked after the alleged disability onset date . . . this work activity did not rise to the level of substantial gainful activity." (Tr. at 17.) At step two, Plaintiff was determined to have "the following severe impairments: a degenerative disc disorder, lumbar radiculopathy, cervical radiculopathy, spinal stenosis, neurogenic claudication, neuropathy; paresthesia in the bilateral hands, a history of right shoulder internal derangement, left shoulder bursitis and fibromyalgia," and these impairments "significantly limit the ability to perform basic work

2

activities." (*Id.* at 18). However, with respect to Plaintiff's "obesity and hypertension," the ALJ found the "evidence fails to establish a 'severe' impairment" due to these conditions, based on Plaintiff's medical history. (*Id.*) The ALJ also analyzed the degree of impairment caused by Plaintiff's anxiety and depressive disorders, finding there was no limitation in three out of four categories. (*Id.* at 18–19.) Moreover, because Plaintiff's "medically determinable mental impairments cause no more than mild limitation in any of the functional areas <u>and</u> . . . there is [no] more than a minimal limitation in . . . basic work activities," her mental impairments were similarly "nonsevere." (*Id.* at 19 (emphasis original).) At step three, the ALJ found none of Plaintiff's impairments, either singly or in combination, met or was medically equal to one of the listed impairments in 20 C.F.R. Part 404. (*Id.*) The ALJ therefore proceeded to step four, where she determined that Plaintiff retained "residual functional capacity to perform light work," and this capacity was sufficient to enable her to return to her prior jobs as a clerical worker, cosmetician, cosmetic sales person, appointment clerk, or manager trainee. (*Id.* at 20–24.) The ALJ concluded Plaintiff was therefore not disabled for the purposes of the Act. (*Id.* at 24.)

## II.   STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). A district court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985) (citations omitted). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

### III. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

4

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits.

*See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the claimant's specific impairment is not listed, the ALJ will consider the most similar listed impairment to decide whether the claimant's impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, then the ALJ must consider whether the combination of impairments equals any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated in 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform,

6

consistent with [his or] her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. An ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

On appeal, the harmless error doctrine requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19–21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm)

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). However, factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks

omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

IV. **DECISION**

Plaintiff argues the ALJ's decision should be overturned on several grounds. She argues the ALJ erred by not fully considering an alleged medical opinion offered by her chiropractor, Dr. Spano. (ECF No. 9 at 13.) She believes the ALJ's categorization and consideration of her prior work experiences were unfounded and not supported by substantial evidence. (*Id.* at 19.) Additionally, there are two conditions, obesity and her mental health issues, where she argues ALJ Allard failed in her duty to fully develop the record. (*Id.* at 20.) Finally, she argues the ALJ did not provide a sufficient logical basis for not crediting her testimony as to her own disability. (*Id.* at 25.) In response, the Commissioner points out that Plaintiff was primarily responsible for providing the evidence and argues the ALJ did completely develop the record and articulate the logic behind her decision. (ECF No. 11 at 12–13).

**A. The ALJ did not err when she declined to consider the course of treatment suggested by Plaintiff's chiropractor as evidence.**

Plaintiff argues the ALJ's opinion should be overturned for failure to consider the "assessment" offered by Plaintiff's "treating chiropractor, Dr. Spano." (ECF No. 9 at 13.) "[A]n ALJ may not simply ignore the opinion of a competent, informed, treating physician." *Gilliand v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986). Under current SSA regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion," but must "consider those medical opinions or prior administrative medical

findings from that medical source together using the [specified] factors . . . as appropriate." § 404.1520c(a).

There are two problems with Plaintiff's argument. First, Dr. Spano is not a physician, and second, his treatment plan for Plaintiff is not a medical opinion. Under 20 C.F.R. § 416.913, a "medical opinion is a statement from a medical source," evidencing the scope of a petitioner's impairment and RFC. "However, a chiropractor's opinion is not an acceptable medical source," and is not entitled to consideration. *Hartranft v. Apfel*, 181 F.3d 358, 361 (3d Cir. 1999) (citing 20 C.F.R. § 416.913); *see also Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (explaining an ALJ may "discount [a] chiropractor['s] . . . opinion" because a chiropractor "is not considered an 'acceptable source' and, thus, his opinion cannot establish the existence of an impairment"). Plaintiff argues the new regulations "accentuate[]" the ALJ's responsibility explain its analysis of a medical opinion. (ECF No. 9 at 21–22.) Even so, these regulations still require that a "medical opinion" be "a statement from a medical source." 20 C.F.R. § 416.913. Therefore, there is "no error in th[e] omission" of Dr. Spano's assessment from evidence. *Siravo v. Comm'r of Soc. Sec.*, Civ. A. No. 15-2836, 2017 WL 1246347, at *10 n.3 (D.N.J. Apr. 4, 2017) (holding ALJ was permitted to omit a chiropractors' opinion from consideration).

Further, the SSA's regulations provide not every document from a healthcare provider— even a physician—qualifies as a medical opinion. A medical opinion is a "statement from a medical source about what [Plaintiff] can still do despite [her] impairments." 20 C.F.R. § 404.1513(a)(2). Though not granted "any specific evidentiary weight," the ALJ must consider and "articulate in [its] determination or decision how persuasive [it] finds all of the medical opinions . . . in [the] case record." 404.1520c(a). This articulation must address each medically acceptable "source," assess the "supportability . . . and consistency" of the opinion, and identify

9

all "equally persuasive medical opinions or prior administrative findings about the same issue" as the medical opinion. *Id.* at (b)(1)–(3). By contrast, "medical history, clinical findings, diagnosis, treatment[s] prescribed with response, or prognosis" qualify as "other medical evidence." 20 C.F.R. § 404.1513(a)(3). The ALJ may use this evidence to help evaluate the "[c]onsistency" of a medical opinion because "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion." *Caradine v. Kijakazi*, Civ. A. No. 21-0014, 2022 WL 20054867, at *14 (M.D. Pa. May 26, 2022), *report and recommendation adopted*, 2023 WL 3851974 (M.D. Pa. June 6, 2023) (citation modified). But there is no requirement the ALJ perform this same analysis with evidence other than medical opinions. *See Jones v. Dudek*, 134 F.4th 991, 995 (7th Cir. 2025) (noting whether this analysis was required necessitated "distinguish[ing] between medical opinion evidence and other medical evidence")[2] The evidence submitted by Plaintiff is the prognosis and treatment plan created by her chiropractor. (Tr. at 1055–60.) It was not written for the Court's

---

[2] There is an unresolved question about how broadly to read the definition of a medical opinion. According to the Tenth Circuit, to qualify as a medical opinion, the medical source must evaluate the claimant's "ability to perform the *specific* demands of work activities." *Staheli v. Comm'r*, 84 F.4th 901, 907 (10th Cir. 2023) (emphasis added). The Seventh Circuit "read[s] it more broadly than the . . . Tenth Circuit" and believes there is "no requirement that a 'medical opinion' limit itself only to statements about whether a claimant can perform specific workplace demands." *Dudek*, 134 F.4th at 997. In making this ruling, the Court takes no position on this question other than to say a medical opinion must by authored by a medical source who must take some steps to address what the claimant is still able to do despite the impairment.

consideration, nor does it contain any assessment of what Plaintiff "can still do despite [her] impairments." 20 C.F.R. § 404.1513(a)(2).

ALJ Allard therefore was not required to evaluate Dr. Spano's treatment plan as a medical opinion, and her findings regarding Plaintiff's RFC were based on substantial evidence.

### B. The ALJ's prior relevant work findings were based on substantial evidence.

Plaintiff also challenges the ALJ's findings regarding her work history and how the ALJ chose to categorize her past jobs. Specifically, Plaintiff argues: (1) her position at the "Car Dealership in 2015" was a "composite job," not an appointment clerk (ECF No. 9 at 19); (2) due to her disabilities, she did not retain the position at the "Chrysler Jeep in 2019 and 2020" long enough to learn to do it under § 404.1565(a) (*id.*); and (3) the reasoning given by the ALJ is insufficient to support the ALJ's decision on review. (ECF No. 9 at 19–21.)

First, Plaintiff argues the ALJ miscategorized her prior work history at a car dealership as an appointment clerk, when she believes it to be a "composite job," which "require the performance of significant elements of two or more occupations" and have "no counterpart in the [Dictionary of Occupational Titles]." (ECF No. 9 at 19.) Assuming Plaintiff is correct about the proper categorization of this job, she provides no authority showing this to be a *legal* error. (*Id.*) An ALJ's reliance on the vocational expert's testimony "constitutes substantial evidence," so long as it is rests on a "a complete and accurate factual basis." *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005). Here, Plaintiff does not contest that the vocational expert was given a proper basis for their categorization, she only disputes the conclusion itself. (ECF No. 9 at 19.) The record is clear: Plaintiff's role was most similar to that of an appointment clerk was based on Plaintiff's own description of the role as "answering phones and making appointments," and, at the time of the hearing, Plaintiff appeared to agree that appointment clerk was the label that fit her role. (Tr. at 59,

11

80–83.) It is not this Court's role to impose its own lay-judgment of job categorization where the expert properly based his or her testimony on a comprehensive view of the facts, therefore the Court will not remand on this basis.

Second, regardless of the categorization of her role within the car dealership, it is undisputed that Plaintiff would later take a position at another automotive dealer, Chrysler Jeep, in 2019 and 2020. (ECF No. 9 at 19.) However, the parties dispute whether she remained in the role long enough to actually learn the job, and whether her job was appropriately evaluated under the "services test." (ECF No. 9 at 19–20; ECF No. 11 at 25.) Plaintiff argues that the ALJ failed to consider whether this job qualified as substantial gainful activity when accounting for the accommodations she alleges she was provided. (ECF No. 9 at 20.) But as the Commissioner points out, Plaintiff's testimony only suggests she did not do "heavy lifting" while at that job because she "could not do heavy lifting." (Tr. at 59.) There is no indication that Plaintiff received a special accommodation, rather than taking a role where heavy lifting was not required because of her limitations.[3] There is therefore no evidence that her limitations reduced the value of her work to such a degree that the work should not be considered substantial gainful activity.

Finally, Plaintiff claims the ALJ did not provide "clear and satisfactory explication of the basis" for its decision. (ECF No. 9 at 12 (citing *Cotter v. Harris*, 642 F.2d 700, 703 (3d Cir. 1981).) Plaintiff argues this failure alone justifies remanding the case, citing *Cotter*. (ECF No. 9 at 12.)

---

[3] In her brief, Plaintiff claims she testified she did not have to perform "walking tasks" at this position. (ECF No. 9 at 19.) However, the section of the transcript Plaintiff cites to (Tr. at 57–58) does not appear to support this characterization. Quite the contrary, Plaintiff testified before the ALJ she performed "clerical work" and her tasks involved "a lot of . . . walking [and] making appointments" alongside tasks of similar exertion. (Tr. at 57.) Plaintiff may be referring to her testimony that her job involved "[p]rimarily sitting," as opposed to standing, but there is similarly no indication that this is a special accommodation for the Plaintiff rather than a common aspect of clerical work.

Indeed, a fulsome record is necessary not only for the review of decisions, but it also helps to ensure proper administrative consideration and ensure the parties are able to plan their cases before an ALJ. *Cotter*, 642 F.2d at 703. Having reviewed the record and the ALJ's decision, the Court is satisfied that the ALJ adequately explained the reasons for denying Plaintiff's claim. Unlike in *Cotter*, where the ALJ "gave no reason for implicitly rejecting obviously probative evidence," here the ALJ duly weighed the conflicting evidence and relied on the medical opinions of Dr. Potashnik and Dr. Bagi who examined Plaintiff and concluded she possessed "a functional range of motion," that there was "no evidence of pathological weakness," and her "sensory exam was grossly normal," on both the lower and upper body. (Tr. at 22.) The ALJ used this medical information, alongside input from a vocational expert, to find Plaintiff had sufficient functional capacity to be "standing and walking for six hours and sitting for six hours during the course of an eight hour work day," so long as the work does not involve lifting and carrying over "20 pounds," which the ALJ found was sufficient to enable Plaintiff return to her prior employment. (Tr. at 20.)

For each of the foregoing reasons, the Court finds the ALJ's decisions regarding Plaintiff's prior relevant work findings to be grounded in substantial evidence.

### C. The ALJ adequately developed a record on each of Plaintiff's conditions.

Despite the non-adversarial nature of the hearings, claimants bear the burden of establishing that they are disabled. The ALJ can only assess impairments the claimant testifies they have, and only to the extent the claimant actually provides evidence of their nature and severity. 20 C.F.R. § 404.1512 (a) ("In general, you have to prove to us that you are blind or disabled . . . [and] must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled."). In turn, it is the ALJ's responsibility to "analyze *all the evidence in the record* and provide an adequate explanation," for its decision and "develop . . . the record and

13

explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 504–05 (3d Cir. 2004) (emphasis in original). To the degree the ALJ fails either of these responsibilities, that is a potentially reversable error. *Id.* Here, Plaintiff claims the ALJ failed to address or adequately develop the record regarding her obesity and her depression, and how these conditiions contribute to her impairment. (ECF No 9 at 24, 28.)

According to Plaintiff, the ALJ found her obesity "was not a severe impairment" simply because "she did not testify regarding any functional limitation regarding her obesity," and with little other reason. (*Id.* at 28.) This, she argues, is a violation of the ALJ's "independent obligation to properly develop the record in disability proceedings," under *Sims v. Apfel*, 530 U.S. 103, 111 (2000). This objection is misguided on two points. First, as the Commissioner argues, claimants before the ALJ bear the duty of providing evidence regarding their own disability. *Alejandra D. v. Comm'r of Soc. Sec.*, Civ. A. No. 22-175, 2023 WL 2609134, at *8 (D.N.J. Mar. 22, 2023) ("[T]he SSA and controlling regulations make clear that the burden is always on the claimant to present evidence of her disability."). Where, as here, "a claimant is represented" and her counsel agrees the ALJ is presented with "the complete record of all relevant evidence" (Tr. at 42), the ALJ may assume claimant has made "her strongest case for benefits." *Alejandra D.*, 2023 WL 2609134, at *8. Even now, Plaintiff's counsel points to no evidence anywhere within the record which suggests Plaintiff suffers from severe limitations due to her obesity (ECF No. 9 at 28)—despite documents pertaining to her obesity being part of the record (Tr. at 657–59). Second, Plaintiff diminishes the degree of consideration her obesity was given by the ALJ. (ECF No. 9 at 28.) The ALJ discussed Plaintiff's obesity and hypertension together, finding there "is no evidence of recurrent emergency room visits, inpatient hospital admissions or end organ damage," and no testimony that the obesity and hypertension created substantial impairment. (Tr. at 18.) Nonetheless, Plaintiff's obesity and

14

hypertension were considered alongside her other impairments to determine her RFC. (*Id*.) The Court finds the record is sufficiently developed in light of the evidence presented to the ALJ.

There is also the issue of Plaintiff's depression and anxiety, which the ALJ ruled on despite not possessing a medical opinion specifically addressing Plaintiff's mental health. (ECF No. 9 at 28.) But it is well established "the regulations do not require ALJs to seek outside expert assistance" for "each fact incorporated into the decision." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011); *see also Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) (stating there is no "legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC"). The ALJ properly reviewed Plaintiff's treatment records and testimony showing "no limitation" in "understanding, remembering, or applying information, . . . interacting with others . . . [and] adapting or managing oneself," and only a "mild limitation" in "concentrating, persisting or maintaining pace." (Tr. at 18–19.) This decision was not based on the ALJ's lay opinion, but an extensive overview of Plaintiff's treatment history and notes from her physicians. (*Id.*) The ALJ therefore was not required to order an outside expert opinion, and her decision was supported by substantial evidence.

**D.  The ALJ did not err in declining to accept Plaintiff's testimony as true.**

Plaintiff also proposes a more general objection to the ALJ's findings, arguing that the ALJ inappropriately discounts Plaintiff's own testimony, which "if credited as true" would justify "a finding of disability under the Act." (ECF No. 9 at 27.) A failure to consider the claimant's own testimony as evidence can be grounds to vacate an ALJ's decision, even where the "the ALJ simply

15

do[es] not find such testimony credible." *See Keith v. Comm'r of Soc. Sec.*, Civ. A. No. 12-4172, 2013 WL 6904070, at *6 (D.N.J. Dec. 31, 2013).

However, Plaintiff mischaracterizes the degree of consideration the ALJ gave her testimony. (ECF No. 9 at 27.) The record is clear the ALJ thoroughly considered Plaintiff's testimony but found it was "not entirely consistent with medical evidence and other evidence in the record." (Tr. at 21.) For example, Plaintiff testified she was unable to extend her arms for longer than "two seconds" and could not reach overhead without substantial pain. (*Id.* at 73.) However, upon examination with the Neurological Associates, Plaintiff "did not complain of shoulder pain," and had a "functional range of motion" with "no evidence of pathological weakness." (*Id.* at 23.) Despite inconsistencies with her testimony, the ALJ considered "the evidence in its entirety, including the testimony adduced at the hearing," and found claimant was in fact "unable to perform a full range of work due to her impairments," but retained enough functional capacity to perform "light work with postural and manipulative limitations." (*Id.*)

An ALJ "is entitled to reject a claimant's testimony if he finds they lack credibility," so long as their decision on that front "contain[s] a thorough discussion and analysis of the objective medical and the other evidence." *Keith*, 2013 WL 6904070, *6 (quoting *Gibson v. Astrue,* Civ. A. No. 12-cv-1219, 2013 WL 1163366, at *13 (D.N.J. Mar. 19, 2013)). Here, the ALJ's analysis of Plaintiff's testimony is sufficient to justify her decision to not fully credit the testimony as true, and the decision was therefore supported by substantial evidence.

V.  **CONCLUSION**

For the reasons set forth above, and for good cause having been shown, Plaintiff's appeal of the Commissioner's final decision is **DENIED**, and the ALJ's decision is **AFFIRMED**.


Date: January 12, 2026                            /s/ *Brian R. Martinotti*
                                                               **HON. BRIAN R. MARTINOTTI**
                                                                **UNITED STATES DISTRICT JUDGE**